FISS, DOERR & CARROLL HORSE CO. v. KIERNAN.

(Supreme Court, Appellate Term. March 5, 1908.)

1. SALES—REMEDIES OF SELLER—ACTIONS FOR PRICE—EVIDENCE—SUFFICIENCY.
In an action for the price of a horse, evidence examined and *held* to show that defendant was entitled under the terms of the agreement to keep the horse on trial only 48 hours before accepting or returning it.

2. SAME—OPERATION AND EFFECT—TRANSFER OF TITLE AS BETWEEN PARTIES.
Where defendant took a horse on trial for 48 hours, his retention of it for a longer time transferred the title to himself, though it was retained but a short time beyond that period; and on the death of the horse thereafter he was bound to pay its reasonable value.

Appeal from Municipal Court, Borough of Manhattan, Sixth District.

Action by the Fiss, Doerr & Carroll Horse Company against Hugh Kiernan. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and MacLEAN, JJ.

Frederick A. Tanner, for appellant.

GILDERSLEEVE, P. J. The complaint herein alleges that on September 26, 1906, plaintiff sold and delivered to defendant a certain mare, for which defendant promised to pay $200, and that said mare was reasonably worth $200; that no part thereof has been paid; and that said sum, with interest, is due and owing. The answer is a general denial. The case was tried by the court without a jury, and judgment rendered for the defendant. Plaintiff appeals.

Whatever may be said on the question of sale and delivery, the evidence admits of but one conclusion as to price. Practically, therefore, but one question was contested upon the trial, viz.: Was there a sale and delivery of the mare? The plaintiff is a domestic corporation engaged in dealing in horses. The defendant is a truckman using a number of horses, and had for years been a customer of the plaintiff. On September 26, 1906, one of defendant's horses dropped dead in the street, and defendant phoned his driver to go to the plaintiff's stables, in Twenty-Fourth street, and get a horse to take him home. Accordingly the driver, one John Joseph Hughes, went to said stables, saw plaintiff's salesman, Henry Hayman, who turned over to him the mare in question, saying: "I want the horse back to-morrow morning." This was 2 or 3 o'clock in the afternoon. In about half an hour the defendant came in, learned from Hayman that his driver had taken the mare, and after some conversation, was told he could have her for $200. Hayman testifies that at this time he told the defendant to send the mare back the following morning, and on cross-examination swears that defendant said: "If the horse suits me, I will keep the horse." The mare was never paid for and never returned. After she had been in defendant's possession about three days, and on September 29th, in the afternoon, she showed signs of sickness, and died the same afternoon. The driver testifies he took her, by instructions from

the defendant, to plaintiff's stables in Twenty-Fourth street, and was there told she was all right, but that she dropped dead when he got as far as Twenty-Eighth street. The testimony is conflicting as to whether Hayman did or did not see the mare at this time. The cause of the mare's death does not appear. There is some evidence from which it might be inferred that it was colic. The defendant testifies that up to the time she was taken sick he was satisfied with her appearance and her work. There is no evidence that the mare was unsound or diseased in any way. All evidence as to her condition is quite the contrary. We have seen what the plaintiff's salesman, Hayman, testifies he said to the defendant less than one hour after the mare had been placed in the possession of the defendant's driver. The defendant's recollection of what was said at this time is as follows:

"Hayman told me that he [defendant's driver] had already a horse, and I says, 'All right.' I didn't see the horse, and I told him, if I seen. him, I would look him over, and if he was all right I might keep him, and in the event I didn't keep him I would come down and let him know in a couple of days, and he said, 'All right;' and on the third day the horse died—after the 26th—and after that he sent me a bill."

The bill is for $200, and is in evidence, dated October, 1906. Hayman says it was sent from four to six days after the 26th of September. Hayman testified, without substantial contradiction, that the rule or custom of the plaintiff in selling horses imposed as a condition of sale that if the horse is not returned within 48 hours he is the property of the man who purchases him:

"Q. What are the conditions of selling horses? A. We give a man we know is good a fair trial, 24 hours. Q. What is the rule or custom with your firm in selling horses? A. Forty-eight hours at the most."

It appears that the defendant had bought as many as 40 horses from plaintiff, and never before had kept a horse on trial as long as 3 or 4 days. We think the evidence shows conclusively that the mare was sound when taken by defendant, that he was told the price was $200, that she was of the reasonable value of $200, that he was told to return her the next day if not satisfied, that he was satisfied with her, that he said if suited he would come and pay for her, that he was not entitled to a trial of more than 48 hours, and that the time fixed by himself for deciding as to the purchase was a couple of days. We think the transaction required the defendant to return the mare within 48 hours, and, failing to do so, he became bound to retain the animal and pay the reasonable value therefor. Although the trial period was actually but little in excess of the defendant's right, it was substantial, and we are of the opinion the title to the mare had vested in defendant at the time of her death.

The decision of the learned trial justice is contrary to the evidence and should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.